**In re Anonymous No. 88 D.B. 92**

Disciplinary Board Docket no. 88 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SLOANE, *Member,* November 10, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On March 31, 1992, pursuant to Rule 214(d)(1), Pa.R.D.E., the Supreme Court of Pennsylvania issued a rule to show cause why respondent should not be placed on temporary suspension from the practice of law in this Commonwealth. The rule was issued after respondent's June 17, 1991 conviction in the United States District Court for the [    ] District of Pennsylvania of the offense of distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. §841(a)(2).

On September 10, 1992, by order of the Supreme Court of Pennsylvania, respondent was placed on temporary suspension from the practice of law in this Commonwealth, pursuant to Rule 214(d), Pa.R.D.E.

The Office of Disciplinary Counsel filed a petition for discipline of respondent on March 12, 1993. The petition charged that respondent's criminal conduct represents an independent basis for the imposition of discipline under Rule 203(b)(1), Pa.R.D.E. The petition further charged that respondent's conduct which resulted in his conviction involved moral turpitude, was prejudicial to the administration of justice and adversely reflected on his fitness to practice law, in violation of D.R. 1-102(A)(3), D.R. 1-102(A)(5) and D.R. 1-102(A)(6), respectively.

On April 14, 1993, respondent filed an answer to the petition for discipline and admitted the misconduct as alleged. Respondent admitted that his conduct did involve moral turpitude but denied that his criminal conduct was prejudicial to the administration of justice or that it adversely reflected on his fitness to practice law.

The matter was referred to Hearing Committee [    ] which was chaired by [      ], Esquire and included members [      ], Esquire and [      ], Esquire. A hearing on the matter was held on July 7, 1993, at which time petitioner introduced a stipulation of facts accompanied by five documentary exhibits, all of which were admitted into evidence. Respondent testified and offered four exhibits, all of which were admitted into evidence. On July 9, 1993, at the request of the chairman and with the agreement of the parties, an additional exhibit was submitted. On October 19, 1993, the Hearing Committee filed its report on the matter and recommended that respondent be suspended for one year retroactive to March 12, 1993.

Petitioner filed a brief on exceptions on November 9, 1993, in which petitioner took the position that a one-year suspension retroactive to the filing of the pe-

tition for discipline cannot be sustained. In support of its position petitioner cites respondent's 10-year pattern of cocaine use involving an estimated 200 incidents, many of which occurred while respondent was a [    ] with the Office of the [A] of Pennsylvania, a position of considerable influence and visibility. Moreover, petitioner noted that the sanctions for cocaine possession and distribution which have been imposed in previous cases have involved suspension for several years to disbarment. Petitioner submitted that a suspension of four years is the appropriate sanction and requested oral argument.

Respondent's brief on exceptions was filed on December 1, 1993, in which respondent requested that the Hearing Committee's recommendation of a one-year suspension was appropriate and that this recommendation should be adopted by the board.

Oral argument was heard on May 16, 1994.

The matter was adjudicated at the June 22, 1994 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is now located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], is currently suspended from the practice of law by order of the Supreme Court of Pennsylvania dated September 10, 1992.

(3) Respondent was born in 1947, graduated from [    ] School of Law in 1972 and was admitted to the practice of law in the Commonwealth on September 26, 1972.

(4) Respondent was [B] in [    ] County from the time of his admission to the bar in 1972 until the latter part of 1975.

(5) From late 1975 until late 1981 respondent was in private practice, and thereafter, he joined the Office of the [A] as head of the [C] section which handled referrals from [B] who could not prosecute cases due to conflicts or lack of resources.

(6) Respondent's use of cocaine began sometime in 1980 and he last used it in August or September 1989. Respondent estimated that he used cocaine on approximately 200 occasions during this extended time period.

(7) Respondent asserts that he was never addicted to cocaine and that his use of cocaine was sporadic and moderate and that he shared cocaine supplies with friends in social settings. On occasion respondent purchased amounts of cocaine in less than one gram for personal use.

(8) Respondent used cocaine while serving in the [A's] Office. The [A], [D], was not aware of respondent's cocaine use. However, there is no allegation that respondent's cocaine use affected his performance as an attorney.

(9) After allegations of drug use in the [A's] Office were raised, respondent resigned from the Office of the [A] in September 1986.

(10) Respondent's use of cocaine continued after he resigned from the [A's] Office for approximately three more years.

(11) From December 1986 until approximately July 1, 1991, respondent engaged in the private practice of law.

(12) An information against respondent was issued by the United States Attorney in [    ], Pennsylvania on August 15, 1990. The information charged respondent with one count of possession of cocaine with intent to deliver, in violation of 21 U.S.C. §841(a)(2), and stated that the conduct occurred over a period of time between August 1985 and October 1987 in [    ] and [    ] Counties, Pennsylvania.

(13) On August 15, 1990, respondent pleaded guilty to the charges set forth in the information.

(14) A violation of 21 U.S.C. §841(a)(2), relating to the distribution of controlled substances, carries a sentence of up to five years imprisonment, and such a violation constitutes a "serious crime" within the meaning of Pa.R.D.E. 214.

(15) On May 31, 1991, the Honorable [E], United States District Judge, imposed a sentence on respondent that he be imprisoned for a period of 11 months, and that he be fined the sum of $5,000. Judge [E] subsequently reduced the sentence to nine months imprisonment and a fine of $500.

(16) Respondent's appeal from his sentence was unsuccessful and he began serving his sentence on July 20, 1992, and completed it on February 10, 1993.

(17) The Supreme Court of Pennsylvania, by order dated September 10, 1992, suspended respondent from the practice of law pursuant to Pa.R.D.E. 214(d) relating to attorneys convicted of crimes, and referred the matter

to the Disciplinary Board for disciplinary proceedings. Respondent continues on suspension pending the resolution of the disciplinary proceeding initiated by the instant petition for discipline.

(18) Respondent admits that his conviction is an independent basis for the imposition of professional discipline and that the misconduct on which the conviction was based violated D.R. 1-102(A)(3), illegal conduct involving moral turpitude.

(19) Respondent asserts that his misconduct on which the conviction was based does not violate either D.R. 1-102(A)(5), conduct that is prejudicial to the administration of justice or D.R. 1-102(A)(6), conduct that adversely reflected on his fitness to practice law.

(20) Respondent's possession and use of cocaine was done over a period of time wherein he served as a [    ].

(21) Assuming arguendo respondent's assertion that his use of cocaine did not affect his performance on the job, respondent's conduct, nevertheless, did breach his legal and ethical duties which transcend mere job performance.

(22) Respondent's illegal drug activity placed him in a position of ignoring and, therefore, condoning violations of the law by others in his social circle, including respondent's drug supplier.

(23) There are no significant mitigating factors in the instant petition. Respondent was not under the influence of an addiction or impairment of judgment when he made 200 reasoned decisions to violate the law. Moreover, respondent has shown no evidence, whatsoever, of remorse or regret for his misconduct.

(24) There are significant aggravating factors in the instant petition. Respondent held one of the [    ] law

enforcement positions in this Commonwealth, to wit, he was a [ ] within the [A's] Office. Further, his blatant violation of the very laws he was sworn to uphold on 200 separate occasions over an extended period of time further exacerbate respondent's misconduct.

## III. CONCLUSIONS OF LAW

(1) Respondent's conviction for the distribution of controlled substances, 21 U.S.C. §841(a)(2) is conclusive evidence that respondent committed the criminal offense as charged. A violation of this section carries a sentence of up to five years imprisonment and constitutes a "serious crime" within the meaning of Pa.R.D.E. 214.

(2) Respondent's conviction of a serious crime is an independent basis for the imposition of professional discipline under the terms of Rule 203(b)(1), Pa.R.D.E.

(3) By his possession of cocaine resulting in conviction on charges of violation of 21 U.S.C. §841(a)(2), respondent violated the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(3)—which prohibits a lawyer from engaging in illegal conduct involving moral turpitude;

(b) D.R. 1-102(A)(5)—which prohibits a lawyer from engaging in conduct prejudicial to the administration of justice; and

(c) D.R. 1-102(A)(6)—which prohibits a lawyer from engaging in conduct adversely reflecting on fitness to practice law.

## IV. DISCUSSION

As a result of respondent's conviction, there is no question presented as to whether misconduct occurred.

Rule 214(e), Pa.R.D.E. states that a certificate of conviction serves as conclusive evidence of the commission of a crime in any disciplinary proceeding commenced against an attorney based upon the conviction. *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 19, 584 A.2d 296, 297 (1990). Furthermore, respondent's conviction of the serious crime of distribution and possession with intent to distribute cocaine establishes a per se basis for discipline pursuant to Rule 203(b)(1), Pa.R.D.E. Consequently, having established misconduct and the basis for the imposition of discipline, the only outstanding issue is the measure of discipline to be imposed.

The paramount purpose of the lawyer discipline system is the determination of the fitness of an attorney to continue the practice of law. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 79, 526 A.2d 1180, 1186 (1987); *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 320, 507 A.2d 1215, 1219 (1986). The system is designed to preserve the integrity of the courts and to protect the public. *In re Oxman,* 496 Pa. 534, 544-45, 437 A.2d 1169, 1174 (1981). Additionally, the system must preserve the public confidence in the legal profession and the judicial system. *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 402, 441 A.2d 1197, 1200 (1982).

Therefore, when a disciplinary proceeding is predicated upon an attorney's conviction of a serious crime, the issue becomes whether the attorney's character, as shown by his conduct, makes the attorney unfit to practice law from the standpoint of protecting the public and the courts. *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 181, 512 A.2d 607, 609 (1986). (citation omitted) Accordingly, it is necessary to scrutinize the events surrounding the criminal conviction in order "to

weigh the impact of the conviction upon the measure of discipline" to be imposed. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 391, 441 A.2d 1193, 1195 (1982), quoting *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 320, 383 A.2d 952, 953 (1978).

Thus, the board must evaluate respondent's conduct for disciplinary purposes. The board's recommendation is based upon the instant petition's unique factual circumstances. In addition, the board considers any mitigating or aggravating factors. See *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983).

There is no dispute regarding respondent's criminal conduct. Respondent purchased and used cocaine in 200 separate incidents over an extended period of time. Respondent freely admits that he intended his acts as well as their consequences, and he acknowledges that he knew that his conduct was criminal and illegal. Not only does the record in the instant matter make it unquestionably clear that his criminal misconduct involved moral turpitude, respondent admits that his conduct is in violation of D.R. 1-102(A)(3). See *Office of Disciplinary Counsel v. Shorall,* 527 Pa. 413, 421, 592 A.2d 1285, 1289 (1991) ("Moral turpitude . . . involves 'anything done knowingly contrary to justice, honesty, principal or good morals.' "). (citation omitted)

Respondent's justification for his misconduct, that (a) his use of cocaine at social gatherings was not "that big a deal" and (b) that on his personal time he was not a law enforcement agent, is unconvincing. Respondent could not turn off his legal and moral obligations once he left his office each day. His commitments to his profession and to the Commonwealth remained with him on a continual basis and he is subject to discipline for actions committed outside his professional capacity. See *Casety, supra* at 182, 512 A.2d at 610 (lawyers

208

are "bound to maintain high standards of professional conduct at all times"). Respondent's conduct was completely inconsistent with the high ethical standards of the profession and with a lawyer's obligation to maintain a character that is beyond reproach. *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981).

In addition, respondent's argument that his personal conduct had no impact on the community is untenable. Respondent held a [ ] law enforcement position in the Commonwealth, and, therefore, his behavior always reflected upon the manner in which he would pursue the administration of justice. He had a duty to the profession and the administration of justice to uphold the laws of the Commonwealth. His total disrespect for the law was perceived by his social companions, which included other cocaine users and his suppliers, as his countenance of such illegal conduct, that he was not committed to pursuing justice and that the law did not apply equally to all. Such behavior is in violation of D.R. 1-102(A)(5). See *In re Anonymous 60 D.B. 83,* 33 D.&C.3d 187 (1984) (respondent failed as district attorney to take action against drug dealer who sold him marijuana).

Furthermore, it is well-established that "[w]here one who has sworn to uphold the law actively breaches it, his fitness to practice is unquestionably destroyed." *Casety, supra* at 183, 512 A.2d at 610. (citation omitted) By his conduct respondent has forfeited his privilege to practice before the bar. Respondent intentionally and knowingly violated a criminal statute by repeated purchase, possession and use of cocaine and he did so in the presence of others, demonstrating to members of the community a complete disregard for the law.

This conduct adversely reflects on his fitness to practice law in violation of D.R. 1-102(A)(6).

As noted, the board considers any mitigating or aggravating factors to determine the appropriate sanction to be imposed. That respondent has been incarcerated does not serve as mitigation in this disciplinary proceeding. The criminal justice system and the disciplinary system are separate and distinct and the fact that respondent has been punished for his criminal behavior by the former does not serve as a mitigating factor when the board reviews respondent's fitness to continue the practice of law.

Respondent's view that his illegal conduct only hurt himself and no one in the community and that he believed he had a private life separate from his life as a lawyer sworn to uphold the law are equally unpersuasive in mitigation. Finally, although substance addiction has been viewed as a mitigating factor in disciplinary proceedings, *In re Anonymous No. 22 D.B. 88,* 14 D.&C.4th 74, 90 (1991), respondent has emphatically stated that he did not have an addiction during the 10 years when he made 200 reasoned decisions to violate the law.

The above notwithstanding, a major and important mitigating factor in respondent's favor would be respondent's significant cooperation with the federal authorities in connection with other investigations. At the sentencing in *United States of America v. [Respondent],* the Assistant United States Attorney, [F], Esquire, made favorable comments to the court relative to respondent's cooperation, as follows:

"[Respondent] worked very, very hard to get ready for the [G] case. I have never met a witness who was better prepared; who had read everything; who was ready to do anything that was necessary within the

law to enhance the government's investigation and to help in any way he could in getting the truth out.

*"I would have to term his testimony as having had a significant impact upon not only the conviction of [G], but the decision of other people to cooperate. I would have to term his cooperation as outstanding. Also I would point out that it's my view that [respondent] has accepted full responsibility for his action.*

"And we ask the court to take that cooperation into account. We ask the court to allow him to receive the benefit of that cooperation because of his very effective participation in the case.

"The seriousness of [respondent's] involvement, I think was no more eloquently stated by the court yesterday in the [G] case, and I'm not going to try to outdo that. *But I would like to inject into that the recognition that [respondent's] cooperation has been outstanding and we request that he receive the benefit of that cooperation."* (See exhibit R2.) (emphasis added)

In the instant matter there are also aggravating factors. Respondent held one of the [   ] legal positions in the Commonwealth. He was in [   ] and violated the oath he took as a [   ] for the Commonwealth. His testimony revealed that while in that [   ] position, he did not believe he had any obligation as an officer of the Commonwealth to refrain from using cocaine in social settings with friends.

Further, respondent, at times, demonstrated a total lack of comprehension of the effect of his criminal conduct on the criminal justice system. Respondent viewed himself as a victim of the media and an unfair political prosecution. Respondent's testimony also evi-

denced a total lack of comprehension of the egregious nature of his misconduct as a lawyer while serving in the Commonwealth's [A's] Office. When cocaine use in the [A's] Office became public in 1986, respondent, who admits that he was a cocaine user at that time, did not come forward and admit his wrongdoing. His response to the public disclosure was to resign his position, to deny his use of cocaine while he was in office and to continue using cocaine while in private practice. Such a total lack of remorse or regret is a significant aggravating factor. See *In re Anonymous Nos. 47 & 89 D.B. 87 & 15 & 23 D.B. 88,* 12 D.&C.4th 122 (1990).

The record in the instant matter demonstrates that respondent believed that he was above the law and that he was free to disregard the very laws that he had sworn to uphold. Furthermore, his testimony demonstrates his complete lack of insight regarding his obligations to his profession and to the Commonwealth.

Having fully considered respondent's misconduct in violation of our criminal laws and the Disciplinary Rules and the aggravating factors and mitigating factors as cited herein, the board concurs with the Office of Disciplinary Counsel that a lengthy suspension is warranted. Respondent needs a significant suspension in order to offer him the opportunity to reflect upon his criminal misconduct and the egregious nature of his breech of trust, in the hope that he will come to understand and appreciate his obligations to the integrity of the bar. The board agrees with the length of discipline advocated by the Office of Disciplinary Counsel[1] and recommends

---

1. See petitioner's brief on exceptions at page 12 and notes of testimony of oral argument at page 27.

that respondent be suspended for a period of four years, retroactive to September 10, 1992. Most certainly, the recommendation of the Hearing Committee for only a one-year suspension is not sufficient. In fact, the real question this board faces is whether or not this respondent's conduct warrants *disbarment.* However, a review of precedents in the Commonwealth, and taking into account respondent's significant cooperation with the government, indicate that Disciplinary Counsel's recommendation of a four-year suspension in the instant matter is the appropriate discipline.

In *Simon, supra* at 312, 507 A.2d at 1215, disbarment was warranted because the respondent was found guilty of *unlawfully, willfully and knowingly conspiring to import, distribute and possess with intent to distribute cocaine.* The aggravating factors were: (1) respondent's knowledge; and (2) acquiescence of the cocaine which was being *sold* on the street and his *refusal to disclose to the authorities* the name of the ultimate purchaser of the cocaine. The respondent failed to cooperate with the prosecutor. In the instant case, the respondent was not convicted of any allegation involving sale or delivery. Moreover, as aforesaid, at the respondent's sentencing, the assistant United States attorney advised the court, inter alia, that:

"I would have to term his testimony as having had a significant impact upon not only the conviction of [G], but the decision of other people to cooperate. I would have to term his cooperation as outstanding. Also I would point out that it's my view that [respondent] has accepted full responsibility for his action." (See exhibit R2.)

The respondent in, *In re Anonymous No. 22 D.B. 88, supra,* received a three-year suspension after being

charged with a single drug transaction involving a client. Moreover, this respondent, in contrast to the respondent in the instant matter, had a significant mitigating factor in that his cocaine habit arose from his alcohol addiction.

Finally, in the case of *In re Anonymous, No. 3 D.B. 89,* 18 D.&C.4th 490 (1993), the Supreme Court ordered a five-year suspension where the respondent was convicted of *possession with intent to distribute* cocaine wherein he distributed same to a police informant. In a dissenting opinion, Justice Papadakos advocated disbarment, noting that there was a distinction between *use* and *distribution* of drugs. In the instant case, the respondent was not a seller or drug trafficker.

In light of the sanctions imposed in the cases cited herein, noting the respondent's important cooperation and testimony in other significant drug prosecutions, the board believes that its recommendation of a retroactive four-year suspension is proper.

## V. RECOMMENDATION

Based upon the foregoing discussion, the Disciplinary Board of the Supreme Court respectfully recommends to your honorable court that respondent, [ ], be suspended for a period of four years retroactive to September 10, 1992.

The board further recommends that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Members Schiller and Paris dissent and would recommend disbarment.

214

Board Members Nix and Miller dissent without recommendation.

Board Members Kerns, Lieber and McGivern did not participate in the adjudication.

## ORDER

November 22, 1995—

Upon consideration of the report and recommendations of the Disciplinary Board dated November 10, 1994, and following oral argument, it is hereby ordered that respondent be and he is suspended from the bar of this Commonwealth for a period of four years, retroactive to September 10, 1992, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro participates by designation as a senior judge as provided by Pa.R.J.A. no. 701(f).