592 A.2d 1285

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Thomas J. SHORALL, Respondent.**

Supreme Court of Pennsylvania.

Argued March 5, 1990.

Decided June 7, 1991.

Edward A. Burkardt, Asst. Disciplinary Counsel in Charge, Mark G. Weitzman, Pittsburgh, for petitioner.

Edward F. Urbanik, Pittsburgh, for respondent.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

This Court, in response to the Report and Recommendation filed in this matter on July 12, 1988, by the Disciplinary Board issued a Rule to Show Cause Why Respondent, Thomas J. Shorall, should not be disbarred from the practice of law in the Commonwealth of Pennsylvania. Having considered the pleadings and briefs filed by Respondent and the Office of Disciplinary Counsel (ODC), having heard oral argument, and having fully reviewed the record submitted by the Board, we order that the Rule to Show Cause be discharged and that Respondent be suspended from the practice of law for a period of three (3) years.

The immediate request for the Petition for Discipline originated from an Order entered by this Court on October 24, 1986, directing that the matter surrounding Respondent's conviction of Misprision of Felony, in violation of 18 U.S.C. § 4, be referred to the Disciplinary Board pursuant to Rule 214(f) of the Pennsylvania Rules of Disciplinary Enforcement, Pa.R.D.E. 214(f).

Thus, on March 2, 1987, Petitioner, the Office of Disciplinary Counsel filed a Petition for Discipline in which it was alleged that Respondent violated the following provisions of the Disciplinary Rules of the Code of Professional Responsibility:

(1) DR 1–102(A)(3), prohibiting an attorney from engaging in illegal conduct involving moral turpitude;

(2) DR 1–102(A)(4), prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

(3) DR 1–102(A)(5), prohibiting an attorney from engaging in conduct that is prejudicial to the administration of justice; and

(4) DR 1–102(A)(6), prohibiting an attorney from engaging in any other conduct that adversely reflects on his fitness to practice law.

Petitioner also alleged that the guilty plea entered into by Respondent was an independent basis for discipline pursuant to Pa.R.D.E. 203(b)(1).[1]

The ODC, in its Petition, alleged that in the course of committing the crime of Misprision of Felony, by willfully concealing the commission by Messrs. Gerald Schall and John Curry of the felony of Interstate Transportation of Property Obtained by Fraud, Respondent actively engaged in the cover-up by making misrepresentations to two FBI Agents, an Assistant United States Attorney, two IRS agents, and a Federal Grand Jury investigating the fraud, to support Schall's and Curry's false version of what occurred.

The Petition for Discipline was referred to a Hearing Committee and on November 17, 1987, and January 15, 1988, hearings were held in this matter. On July 12, 1988, the Hearing Committee filed its Report and Recommendation finding that Respondent voluntarily and knowingly made misrepresentations to the FBI and a Federal Grand Jury. The Committee concluded that by his misconduct Respondent violated all of the Disciplinary Rules charged in the Petition for Discipline and, accordingly, recommended to the Disciplinary Board that Respondent be suspended for six months because of his plea of guilty to Misprision of Felony and his violation of the accompanying Disciplinary Rules.

Exceptions were filed by the Office of Disciplinary Counsel and the matter was referred to the Disciplinary Board. On April 5, 1989, after hearing oral argument from both Petitioner and Respondent, the Board issued its Report and Recommendation. The Board rejected the Hearing Committee's findings of fact that Respondent voluntarily and knowingly made false statements of fact during the investigation of the underlying felonies. The Board found that the

1. Pa.R.D.E. 203(b)(1) states in relevant part: (b) The following shall also be grounds for discipline:
  (1) Conviction of a crime which under Enforcement Rule 214 (relating to attorneys convicted of crimes) may result in suspension.

Committee's conclusion that Respondent violated the charged Disciplinary Rules was not supported by a preponderance of clear and satisfactory evidence as he was not charged with the underlying felony or with perjury. Rather, the Board concluded that Respondent's conduct merely reflected poor judgment and it recommended public censure.

The ODC filed a Petition with this Court under Pa.R.D.E. 207(c)(2) [2] alleging there is clear and convincing evidence on the record that Respondent violated the charged Disciplinary Rules and that he made the misrepresentations to the FBI Agents and the Federal Grand Jury, as found by the Hearing Committee and that Respondent's misconduct warranted at least a six month suspension, as recommended by the Committee. By a May 12, 1989, order, we granted Petitioner's petition under Pa.R.D.E. 207(c)(2) and after Respondent's Brief was filed, by a September 1, 1989, order we issued upon Respondent a Rule To Show Cause why he should not be disbarred. Respondent's request for oral argument was granted pursuant to Pa.R.D.E. 208(e)(3) [3]. Having been briefed and argued, this matter is now ripe for disposition.

In *Office of Disciplinary Counsel v. Stern*, 515 Pa. 68, 526 A.2d 1180 (1987), we had occasion to quote from *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986), wherein we discussed our scope of review and how this Court is guided with respect to evaluating the evidence in attorney disciplinary matters as follows:

**2.** Pa.R.D.E. 207(c)(2) provides that: (C) Disciplinary Counsel: (2) May urge in the Supreme Court a position inconsistent with any recommendation of the Board where in the judgment of Disciplinary Counsel a different disposition of the matter is warranted by the law or the facts.

**3.** Pa.R.D.E. 208(e)(3) provides that:
(3) In the event the Board recommends a sanction less than disbarment, and the Court, after consideration of said recommendation, is of the view that a rule to show cause should be served upon respondent-attorney, why an order of disbarment not be entered, the same should be issued.... Respondent-attorney in such case shall have the absolute right upon request for oral argument.

Before analyzing the testimony offered in support of the charges it must be noted that this Court's review of attorney discipline is a *de novo* one. Thus, we are not bound by the findings of either the Hearing Committee or the Disciplinary Board. *Matter of Green,* 470 Pa. 164, 368 A.2d 245 (1977); *Office of Disciplinary Counsel v. Walker,* 469 Pa. 432, 366 A.2d 563 (1976); *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975), *cert. denied,* 424 U.S. 926, 96 S.Ct. 1139, 47 L.Ed.2d 336 (1976). Although we are free to evaluate the evidence presented before the Hearing Committee, *In re: Silverberg,* 459 Pa. 107, 327 A.2d 106 (1974), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982), we may be enlightened by the decisions of these triers of fact who had the opportunity to observe the demeanor of the witnesses during their testimony. *Matter of Green, supra; Office of Disciplinary Counsel v. Walker, supra; Office of Disciplinary Counsel v. Campbell, supra,....* Nor is the petitioner required to establish the misconduct through direct evidence. The ethical violations may be proven solely by circumstantial evidence. *Office of Disciplinary Counsel v. Grigsby,* [493 Pa. 194, 425 A.2d 730 (1981)]. *Lemisch's Case,* 321 Pa. 110, 184 A. 72 (1936); *Salus's Case,* 321 Pa. 106, 184 A. 70 (1936).

*Stern, supra,* 515 Pa. at 72, 526 A.2d at 1181.

Accordingly, we will now consider those specific findings of fact made by the Hearing Committee. In May 1982, two individuals, Mr. Schall and Mr. Curry, formed Shanna Industries of which Mr. Schall was President. From September 1982 to September 1983, Shanna Industries provided cleaning services and supplies to Southeastern University in Washington, D.C., at allegedly overinflated prices. During this time Mr. Curry was the business manager of Southeastern University. As part of the scheme to defraud the University, the two principals conspired to enter into "sweetheart contracts" between the two organizations which involved "kick-backs" to Mr. Curry. As part of this arrangement Mr. Curry signed two checks issued by South-

eastern University, one in the amount of $13,291, payable to Shanna Industries, and the other in the amount of $11,-147.17, payable to another company owned by Schall.

On June 1, 1983, Sarah Miller, Schall's secretary, went to Curry's office and obtained the checks from him. Curry insisted that Miller endorse the checks over to him. Miller then contacted Schall, who directed her to endorse the checks and give them to Curry,. which she did. The proceeds of the two checks constituted "kick-backs" from Schall to Curry for Curry's having induced Southeastern University to enter into the fraudulent "sweetheart contracts" with Shanna Industries. Curry's wife, Annette, then deposited the checks into the Currys' saving account. The proceeds of the checks constituted property obtained in furtherance of a scheme and artifice to defraud and as the checks were transported in interstate commerce, the felony in question was thereby committed.

Specifically, Respondent's involvement resulted from being asked by Schall, a former client, to be present when Schall was to be questioned by Federal authorities. As a result of this participation it was alleged that Respondent was requested by Schall to tell a false story concerning the delivery of the two checks. Petitioner claims that Respondent proceeded to tell four different versions regarding the delivery of the checks in question. First he allegedly told one version to the FBI on March 7, 1984; he told a second version to the FBI, the IRS, an Assistant United States Attorney and the Federal Grand Jury on February 20, 1985; he told a third version to the same Assistant United States Attorney; and he told a fourth version at the November 17, 1987, disciplinary hearing.

The conviction of Respondent and his related violations of the Disciplinary Rules directly resulted from the web of deceit he wove by offering four different accounts of the events involved to investigating authorities. These versions represented conflicting attempts by Respondent to conceal and legitimize an otherwise fraudulent scheme. The somewhat convoluted history of Respondent's representations is

as follows: in late 1983, Southeastern University auditors discovered that two of their checks drawn in the amount of $13,921 and $11,147.17, respectively, were deposited in the checking account of Mr. and Mrs. Curry. Mr. Curry stated that he was unaware of the delivery of the checks to his wife and that she had deposited them, on her own, into their account. Respondent, knowing this was untrue, confirmed the story to University officials and in an attempt to give an air of legitimacy to the transaction, claimed that he himself delivered the checks to Mrs. Curry. Subsequently, on March 7, 1984, in the presence of two FBI agents, Respondent once again repeated the story of how he personally delivered the checks to Mrs. Curry in June 1983. Mr. Schall, on that occasion, stated that he provided the checks in repayment of a loan that Mr. Curry had in fact, made to him in December 1982. Respondent, when asked whether this version was true and again for the purpose of lending it credibility, indicated that it was true and repeated that he personally delivered the checks to Mrs. Curry.

On February 20, 1985, Respondent was subpoenaed to appear before a grand jury. Prior to his appearance, Respondent told the Assistant United States Attorney, the same two FBI agents, and two IRS agents that in 1983 he delivered an envelope, whose contents he claimed were unknown to him, to Mr. Curry personally and not Mrs. Curry as he stated in prior conversations. Later that same day he repeated this same story before the grand jury. Respondent then, on May 8, 1986, at his arraignment hearing, proceeded to give a third version of the events when he conceded to the judge that he never delivered any checks or envelopes to either Mr. or Mrs. Curry. Finally, at the Disciplinary Hearing held in this matter, Respondent retracted the admission he made to the judge during his arraignment that there had never been any delivery of checks. Instead, he claimed that he never told the authorities on March 7, 1984, that he delivered the checks to Mrs. Curry and further, with regard to his statements to authorities on February 20, 1985, Respondent claimed he merely

made a mistake as to the delivery date, that the envelope he brought to Mr. Curry was delivered in May 1982 not June 1983.

As a result of the federal investigation into this "affair," Respondent faced the potential of being charged with approximately twelve (12) offenses including violations of 18 U.S.C. § 1341 (Fraud); 18 U.S.C. § 1343 (Fraud by Wire, Radio or Television); 18 U.S.C. § 2314 (Interstate Transportation of Property Acquired by Fraud); 26 U.S.C. § 7201 (Income Tax Evasion) and 26 U.S.C. § 7203 (Willful Failure to File Return, Supply Information or Pay Tax). In response to a plea bargain arrangement, Respondent instead pled guilty to the charge of Misprision of Felony,[4] a federal offense, pursuant to 18 U.S.C. § 4, with the imposition of sentence suspended. Respondent was placed on probation for a period of three years, with a condition that he perform 250 hours of community service without compensation within one year, and was fined $3,000 with a special assessment of $50.00.

Based upon these facts, the Hearing Committee found there to be clear and convincing evidence that Respondent made knowing and voluntary misrepresentations to the investigators. The Committee concluded, therefore, that Respondent violated Disciplinary Rules 1–102(A)(3–6); 1–102(A)(3); 1–102(A)(4); 1–102(A)(5) and 1–102(A)(6), *see supra* p. 2. Additionally, the Committee found that the guilty plea was an independent basis for discipline pursuant to Pa.R.D.E. 203(b)(1). *See supra* note 1. The Hearing Com-

---

**4.** The offense of Misprision of Felony is defined as follows:

**Misprision of Felony**

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, fined not more than $500 or imprisoned not more than three years or both.

18 U.S.C. § 4.

We note that the offense of Misprision of Felony is not recognizable as a crime under the statutory law of this Commonwealth nor is it recognized under the common law.

mittee recommended that Respondent be suspended from the practice of law for six months.

The Disciplinary Board rejected the Hearing Committee's conclusions, finding that since Respondent had not been charged with the underlying felony, or with perjury, his conduct did not amount to knowing misrepresentations as required by [DR1–102(A)(4)] but stemmed from "poor judgment rather than dishonesty." *Disciplinary Board Report* at p. 12. The Board further found that Respondent did not violate [DR1–102(A)(3)] the prohibition against engaging in conduct involving moral turpitude. Moral turpitude they argue involves "anything done knowingly contrary to justice, honesty, principal or good morals." *Office of Disciplinary Council v. Simon,* 510 Pa. 312, 320, 507 A.2d 1215, 1220 (1986). Pursuant to that definition the Board again concluded that Respondent's conduct was not violative of [DR1–102(A)(3)] as they found that "Respondent's conduct demonstrated very poor judgment but was not so base or depraved so as to constitute illegal conduct involving moral turpitude." *Disciplinary Board Report* at p. 13. Incredibly, the Board next, in examining Respondent's conduct in view of allegations that he violated [DR1–102(A)(5)] prohibition of conduct prejudicial to the administration of justice, concluded that he did not violate such prohibition. The Board, citing *Simon, supra,* was under the impression that conduct prejudicial to the administration of justice could only result where there exists a conviction for a serious crime. The Board in its report stated, "Here the Respondent was not convicted of a serious crime but, in the words of the sentencing judge, was convicted of ... somewhat less of a true crime...." *Disciplinary Board Report* at p. 13, quoting *Petitioner's Exhibit 5, Sentencing Transcript* at p. 11. Therefore, the Board concluded that Respondent did not violate [DR1–102(A)(5)]. The Board also found that Respondent did not violate [DR1–102(A)(6)] prohibiting conduct that adversely reflects upon a lawyer's fitness to practice law. It opined that Respondent's guilty plea did not create a sufficient basis to conclude Respondent was

unfit to practice law. They determined that since Respondent did not participate in the underlying felony, his conduct did not rise to the intentional "shirk[ing] (of) his responsibility as an officer of the court and exemplified disrespect for the laws which govern our society." *Simon,* 510 Pa. at 321, 507 A.2d at 1220.

The Board did agree, however, that Respondent did in fact plead guilty and accepted that such a plea constituted an independent basis for discipline pursuant to Rule 203(b)(1), *see supra* note 1. After considering Respondent's unblemished record during thirty years of practice, the Board reasoned that his conduct merely reflected poor judgment, and recommended public censure. The ODC argues that it presented clear and convincing evidence to support a finding of the violation of the above listed disciplinary rules, and it urges the imposition of a sanction of disbarment or suspension.

We begin by noting that while the offense Respondent was charged with bore only an indirect and tangential relation to the underlying felony, his conduct and conflicting testimony to authorities after the fact raises doubts as to his motives and honesty. It is undisputed that the principals Schall and Curry committed and completed the felony alleged of Interstate Transportation of Property Obtained by Fraud and that Respondent admitted he was aware of that fact. In applying the requisite elements of Misprision of Felony to the instant matter,[5] the only remaining issue to be resolved is whether Respondent took active steps to conceal the existence of the felony. Petitioner

5. Misprision of Felony "is the concealment of a felony without giving any degree of maintenance to the felony." *United States v. Perlstein,* 126 F.2d 789, 798 (3rd Cir.1942) *cert. denied,* 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 *citing,* 2 Bouvier's Law Dictionary, Rawle's, Third Rev., (8th Ed.) 2225. Specifically "the elements of the crime of Misprision of Felony" are: 1) the principal(s) committed and completed the felony alleged....; 2) the defendant had full knowledge of that fact; 3) the defendant failed to notify the authorities; and 4) the defendant took an affirmative step to conceal the crime." *United States v. Ciambrone,* 750 F.2d 1416 (9th Cir.1984); *see also, United States v. Hodges,* 566 F.2d 674, 675 (9th Cir.1977).

alleges that the four irreconcilable versions given to authorities by Respondent concerning the dates checks were delivered for Mr. Schall constituted calculated misrepresentations intended to conceal the activities of Mr. Schall and Mr. Curry. Since none of the conflicting versions can be reconciled with each other, the ODC claims that several versions must be false and as such Respondent is guilty of lying to investigative authorities including the FBI, the United States Attorney's Office and a Federal Grand Jury. This behavior is argued to be in violation of the Disciplinary Rules enumerated and Respondent's guilty plea is an additional ground for sanctions.

Accordingly, Petitioner urges us to reject the Disciplinary Board's determinations and instead adopt the factfindings of the Hearing Committee. The Committee concluded that Respondent did in fact make knowing misrepresentations to FBI Agents and knowingly testified falsely before a Federal Grand Jury. The Committee specifically found that Respondent stated facts he knew were not true in an effort to provide a cover-up for a client's fraudulent actions.

While Respondent concedes that he did in fact plead guilty to Misprision of Felony, he claims the decision to plead guilty was the result of a plea bargain agreement and in satisfaction of that judgment, Respondent successfully completed three (3) years of probation, 250 hours of community service and paid $3,050.00 in fines.

As stated earlier, while we are free to be enlightened by the decisions below of both the Hearing Committee and the Disciplinary Board, this Court's review is a *de novo* one and as such we are not bound by those decisions below. *Matter of Green*, 470 Pa. 164, 368 A.2d 245 (1977); *In re: Silverberg*, 459 Pa. 107, 327 A.2d 106 (1974). However, we note with interest the following two findings of fact made by the Hearing Committee:

(7) There is no charge or evidence that Respondent participated in the underlying Felony which gave rise to the charge of Misprision of a Felony. He did, however, *admit* at the arraignment before Federal District Judge

John Garrett Penn on May 8, 1986, that *he was aware that others committed a felony*, and *that he failed to bring the same to the attention of the proper authorities.* Additionally, Respondent, in an effort to help provide a cover story for his client, verified to agents of the Federal Bureau of Investigation a statement of facts which was not true. Additionally, Respondent testified at a grand jury proceeding in the District of Columbia to a set of facts which he knew was not true ... (emphasis added).

(9) Misprision of Felony, the charge to which Respondent pleaded guilty, is prohibited behavior under the Federal Statutes, but not under the Statutes of the Commonwealth of Pennsylvania. Notwithstanding that the violation which led to the charge and guilty plea took place out of the jurisdiction of the Commonwealth of Pennsylvania, and is not a violation of Pennsylvania law, it is obvious that *Respondent knew at the time he committed the underlying acts that he was participating in a scheme which was clearly improper. He voluntarily and knowingly committed improper and wrong conduct.* (Emphasis added.)

*Hearing Committee Report* at p. 2.

In view of these facts, we agree with the conclusion of the Disciplinary Committee that there was both clear and substantial evidence of unethical conduct and we further find the explanation of Respondent, a practicing attorney of over thirty years, that he was "confused" when responding to the investigating authorities to be questionable at best, and more realistically, lacking all credibility. In addition, we also find unpersuasive Respondent's argument that he merely pled guilty to Misprision of Felony as an expedient solution to the possibility of facing numerous additional federal charges. While we appreciate the role of plea bargaining under proper circumstances, Respondent remained free to plead not guilty and chose not to do so. In *Commonwealth v. Anthony*, 504 Pa. 551, 475 A.2d 1303 (1984), we held that "a guilty plea is not a ceremony of

innocence, it is an occasion where one offers a confession of guilt. If a defendant voluntarily, knowingly and intelligently wishes to acknowledge facts that in themselves constitute an offense, that acknowledgement is independent of the procedures of proving or refuting them." 504 Pa. at 559, 475 A.2d at 1307–8. The record unquestionably shows that Respondent, after consultation with his attorney, voluntarily pled guilty in return for a reduction of sentence pursuant to a plea bargain agreement. The record also demonstrates that the trial judge took great lengths in questioning Respondent to elicit to his satisfaction that Respondent was aware of the nature and consequence of his actions and that the plea was made knowingly, voluntarily, and intelligently. Respondent cannot now come forward to attack his plea and claim his innocence especially since there is no evidence that he ever challenged his plea or attempted to withdraw that plea in the past. In *Anthony*, we went on to state that "a guilty plea is an acknowledgement by a defendant that he participated in the commission of certain acts with a criminal intent. He acknowledges the existence of the facts and the intent." *Id.*, 504 Pa. at 558, 475 A.2d at 1307. As stated in the Report of the Hearing Committee, despite his protestations, "[T]he fact remains that the Respondent did plead guilty to Misprision of Felony." *Hearing Committee Report* at p. 5. Finally, we completely dismiss Respondent's suggestions that because Misprision of Felony is not recognized as a crime in this Commonwealth either by statute or by the common law that somehow he is immune from disciplinary action in this jurisdiction.[6] Not only is such a suggestion absurd and untenable, it is also irrelevant since what really is at issue in a disciplinary matter are the violations of any rules or codes of Professional Responsibility. These exist and apply to all jurisdictions and their violation outside this jurisdic-

6. Under our Rules of Disciplinary Enforcement, a "serious crime" is defined as one which "is punishable by imprisonment for one year or upward in this or any other jurisdiction." Pa.R.D.E. 214(i). Thus the fact that Misprision of Felony is an offense which is not cognizable under Pennsylvania law does not insulate respondent from discipline.

tion by an attorney licensed to practice in this Commonwealth nonetheless shames the practice of law for all involved.

We believe that upon a full independent review of the record and all the facts therein, there was substantial evidence to sufficiently conclude that the Respondent voluntarily chose to plead guilty and knowingly engaged in misrepresentations and deceit while giving evasive and contradictory testimony to law enforcement and judicial authorities. This pattern of conduct is more than adequate to be violative of Disciplinary Rules 1–102(A)(3) (engaging in illegal conduct involving moral turpitude); 1–102(a)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice); 1–102(A)(6) (engaging in any other conduct that adversely reflects on his fitness to practice law). Indeed, we also agree with the one finding consistent among the tribunals below that Respondent's guilty plea alone is an independent basis for discipline pursuant to Pa.R.D.E. 203(b)(1).

In addition to violating DR1–102(A)(4), we also find that Respondent's knowing attempts at concealing the truth violated DR1–102(A)(3), DR1–102(A)(5), and DR1–102(A)(6) as his illegal conduct involved moral turpitude, was prejudicial to the administration of justice and adversely reflected on his fitness to practice law. As stated earlier, *In Office of Disciplinary Counsel v. Simon, supra,* this Court defined moral turpitude as " . . . . anything done knowingly contrary to justice, honesty, principle, or good morals." *Id.,* 510 Pa. at 320, 507 A.2d at 1220, quoting *Muniz v. State,* 575 S.W.2d 408, 411 (Tex.Civ.App.1978). Clearly Respondent's impeding the discovery of the truth is both contrary and prejudicial to the administration of justice and adversely reflects on his fitness to practice law. Respondent's lack of veracity to judicial authorities is conduct we strongly condemn as it undermines the integrity of the very process he swore to uphold. In *Montgomery County Bar Association v. Hecht,* 456 Pa. 13, 317 A.2d 597 (1974), we stated, "False swearing in a judicial proceeding is certainly an

egregious species of dishonesty and is surely also patently prejudicial to the administration of justice." *Id.*, 456 Pa. at 21, 317 A.2d at 602. The Board's characterization of Respondent's involvement in this scheme as merely "poor judgment" is a conclusion that merely states the obvious and in no way refutes the findings of unethical conduct engaged in and admitted to by Respondent. We believe, therefore, that the evidence substantially supports the conclusion reached by the Disciplinary Committee that Respondent's improper conduct did violate the Disciplinary Rules enumerated.

Having determined that Respondent was in violation of several Disciplinary Rules and compromised the ethical standards of the legal profession, we now address the appropriate discipline to be imposed. In *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730 (1981), we stated, "The purpose of the Code of Professional Responsibility and the Rules of Disciplinary Enforcement is to protect the public, the profession, and the courts. Whenever an attorney is dishonest, that purpose is served by disbarment." 493 Pa. at 201, 425 A.2d at 733. In *Office of Disciplinary Counsel v. Tumini*, 499 Pa. 284, 453 A.2d 310 (1982), the facts were similar to the matter presently before us. In *Tumini*, the Respondent was charged with "laundering checks", delivery of cash payment known to be a bribe, false swearing before a grand jury, and failure to recant false testimony until faced with the possibility of an indictment for perjury. In support of our decision to disbar that attorney, we quoted from *In Re: Oxman*, 496 Pa. 534, 437 A.2d 1169 (1981), to express how this Court views an attorney's conduct which obstructs the administration of justice and the search for truth. Therein we said:

"[M]ost seriously, in requesting witnesses to testify falsely in an effort to impede the Special Judicial Investigation, appellants have breached their ethical duties and have violated the public trust. We particularly condemn appellants' reprehensible efforts to obstruct the administration of justice. See *Office of Disciplinary Counsel v. Campbell*, [463 Pa. 472, 345 A.2d 616 (1975) ]; *Montgom-*

*ery County Bar Association v. Hecht,* 456 Pa. 13, 317 A.2d 597 (1974). Because the record before us reveals a deplorable disregard for the integrity of the judicial process, we are compelled to conclude that appellants are unworthy of the public trust and confidence vested in them as members of the legal profession."
*Id.,* 496 Pa. at 545, 437 A.2d at 1174–75. *Tumini, supra* 499 Pa. at 290, 453 A.2d at 313.

Respondent's repeated and evasive concealment of his client's fraudulent activity to investigating authorities did constitute dishonesty, deceit and misrepresentation within the ambit of DR1–102(A)(4). While the Respondent was never charged with perjury *per se,* his failure to be forthright with judicial authorities demonstrated a callous disregard for the integrity of the judicial process and brings into question his fitness to continue practicing law. As we stated in *Grigsby, supra,* "[T]ruth is the cornerstone of the judicial system; a license to practice law requires allegiance and fidelity to truth." 493 Pa. at 200, 425 A.2d at 733.

In an attempt to diminish the gravity of his misconduct and hopefully lessen the consequences stemming from such action, Respondent introduced mitigating factors to the Disciplinary Board which he argued were proper for the Board's consideration when formulating its Recommendations. Having exhaustively examined and detailed Respondent's transgressions, we now consider those factors which, it is argued, mitigate in favor of diminishing his punishment.

Most notably, Respondent offered in mitigation the fact that since his admission to the bar in 1957 he has been actively engaged in service to both the public and his community, developing a highly regarded reputation among his colleagues and acquaintances for being both honest and fair. Respondent contends that his thirty-year tenure as an attorney reflects his unselfish devotion to public service and is proof of his commitment to the law and to an unsoiled practice. At the hearings below, this argument was supported by witnesses who came forward and testified in

support of Respondent to demonstrate his extensive involvement in charity work and community affairs. It was uncontroverted that Respondent did have a reputation for being a good citizen both in the legal community and the community at large. We find this evidence and its probative value worthy of consideration especially since Respondent's involvement in this "affair" was very indirect and more a product of an error in judgment than some unscrupulous desire to seek personal gain of which there was none to Respondent in this matter.

Respondent also seeks to mitigate his discipline herein by asking that his prior sentence of three (3) years probation be taken into consideration. Further, Respondent also served in excess of two hundred and fifty hours of non-compensable community service and paid over three thousand dollars in fines and assessments. Finally, he asks that the economic hardship and psychological health problems he suffered as a result of his conviction be considered, and he also claims that by having satisfied the conditions of his parole, he has paid his "debt to society."

While we are unmoved by the contention that one who actively engages in misconduct should have the severity of the resulting consequences reduced by considering the hardship occasioned by that misconduct, we do believe that any equitable system of punishment must properly balance all relevant factors, be they offered in aggravation or in mitigation of the conduct in question.

Accordingly, having reviewed the totality of circumstances involved herein, we reject as totally inadequate the recommendations below of both the Board and the Committee which sought to impose either a six-month suspension or public censure respectively. Furthermore, in light of the evidence offered in mitigation, we believe that the ODC's pursuit of the extreme sanction of disbarment is also inappropriate as being too severe and unjustified. We are satisfied that those factors, offered on behalf of Respondent, sufficiently mitigate his conduct as to justify a form of discipline less than disbarment. Thus, the proper penalty

to be imposed upon Respondent must fall between the two extremes identified above. We conclude, therefore, that a three (3) year suspension from the practice of law in this Commonwealth adequately responds to the nature of Respondent's misconduct while it simultaneously acknowledges the mitigating factors which apply to his situation.[7] For the above reasons and consistent with our role in preserving the integrity of the judicial process and the faith of the people of this Commonwealth, we have determined that Respondent must be suspended from the practice of law in this Commonwealth for a period of three (3) years. It is further ordered that he shall comply with Pa.R.D.E. 217, and pay all costs of these proceedings pursuant to Pa.R.D.E. 208(g).

PAPADAKOS, J., did not participate in the consideration or decision of this case.

LARSEN, J., did not participate in the decision of this case only.

---

**7.** We note that Respondent is not entitled to automatic reinstatement once his three-year period of suspension has expired. Pennsylvania Rule of Disciplinary Enforcement 218(a) provides:

a) No attorney suspended for a period exceeding three months, transferred to inactive status more than three years prior to resumption of practice, or disbarred, may resume practice until reinstated by order of the Supreme Court after petition therefor pursuant to these rules. Pa.R.D.E. 218(a).

Rather, Respondent is merely given a chance to return to the practice of law once he petitions for reinstatement, provided that he adequately demonstrates that his rehabilitation is complete. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986).