James M. DUNCAN, Relator,

v.

The BOARD OF DISCIPLINARY
APPEALS, Respondent.

In the Matter of James M. DUNCAN.

Nos. 94–0161, 94–0162.

Supreme Court of Texas.

Argued Nov. 15, 1994.

Decided Feb. 16, 1995.

Rehearing Overruled June 8, 1995.

Robert M. Greenberg, Dallas, William H. Kilgarlin, Santa Fe, NM, for relator.

Dawn Miller, James M. McCormack, Linda A. Acevedo, Christine E. McKeeman, Thomas E. Watkins, Austin, for respondent, in No. 94–0161.

Christine E. McKeeman, James M. McCormack, Dawn Miller, Linda A. Acevedo, Austin, for respondent, in No. 94–0162.

PHILLIPS, Chief Justice, delivered the opinion of the court, joined by GONZALEZ, HIGHTOWER, GAMMAGE and SPECTOR, Justices.

This is an attorney's appeal from a decision by the Board of Disciplinary Appeals ("BODA") to suspend James M. Duncan from the practice of law during the period of his criminal probation resulting from a federal conviction of misprision of felony.[1] We must decide whether misprision of felony is an intentional crime involving moral turpitude *per se*, which would subject Duncan to compulsory discipline. We hold that misprision of felony is not a crime involving moral turpitude *per se*. Once this Court determines that a particular crime does not involve moral turpitude *per se*, the only remaining option is for the Office of Chief Disciplinary Counsel ("OCDC") to pursue discipline based on the underlying facts of the attorney's conduct.

We therefore remand this case to BODA for further proceedings consistent with this opinion.

In March 1993, Duncan pled guilty to the crime of misprision of felony, which is codified at 18 U.S.C. § 4.[2] A United States District Court for the Northern District of Texas placed him on probation for a term of four years and ordered him to pay restitution of $156,753 and a fine of $30,000. The OCDC initiated a compulsory discipline proceeding against him pursuant to Tex.R.Disciplinary P. 8.01 (1992), which provides in pertinent part: "When an attorney licensed to practice law in Texas has been convicted of an *Intentional Crime* or has been placed on probation ... the Chief Disciplinary Counsel *shall* initiate a Disciplinary Action seeking compulsory discipline.... Proceedings under this part are not exclusive in that an attorney may be disciplined as a result of the underlying facts." (emphasis added). "Intentional Crime" is defined as "(1) any *Serious Crime* that requires proof of knowledge or intent as an essential element or (2) any crime involving misapplication of money or other property held as a fiduciary." *Id.* 1.06(O) (emphasis added). "Serious Crime," in turn, is defined as "barratry; *any felony involving moral turpitude*, any misdemeanor involving theft, embezzlement, or fraudulent or reckless misappropriation of money or other property" *Id.* 1.06(U) (emphasis added). BODA found that Duncan was convicted of an intentional crime and suspended his law license for the duration of his criminal probation.

At the compulsory discipline hearing, the OCDC contended that the felony offense of misprision of felony is a crime involving moral turpitude *per se*. Consequently, the OCDC did not introduce any evidence regarding the underlying facts of the crime that Duncan committed.[3] Duncan, through

---

1. Duncan commenced this appeal pursuant to Tex.R.Disciplinary P. 7.11 (1992), which provides that an appeal from a determination by the Board of Disciplinary Appeals shall be to the Supreme Court. By order of February 17, 1994, we granted Duncan's motion to stay suspension pending this appeal.

2. A misprision of felony is not a crime under the Texas Penal Code, nor has it been incorporated into the Model Penal Code. *See generally* Gerard

E. Lynch, *The Lawyer as Informer*, 1986 Duke L.J. 491, 519–22 (1986) (expressing doubt whether the crime of misprision of felony has a meaningful existence).

3. Under Tex.R.Disciplinary P. Rule 8.02, in a compulsory discipline action, the record of conviction is conclusive evidence of the attorney's guilt. There is no question as to the attorney's conduct or the satisfaction of all the elements required in the crime. The only question in this case is

his attorney, agreed that any inquiry into the facts behind Duncan's conviction was inappropriate. The only evidence presented by either side at the hearing was expert testimony on Duncan's behalf by Jerry Zunker, former General Counsel of the State Bar of Texas. Zunker opined that misprision of a felony was not a crime of moral turpitude *per se.* When the OCDC, in cross-examining Zunker, asked certain questions that appeared to inquire into the underlying facts, Duncan successfully objected.

At the conclusion of the hearing, BODA held that misprision of felony involved moral turpitude *per se,* and therefore suspended Duncan's license for the remainder of his criminal probation.

 At the outset, we note that we review legal conclusions by BODA *de novo. In the Matter of Humphreys,* 880 S.W.2d 402, 404 (Tex.1994), *cert. denied,* — U.S. —, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994). Further, the determination of whether a particular crime involves moral turpitude is a question of law. *State Bar of Texas v. Heard,* 603 S.W.2d 829, 835 (Tex.1980).

 In determining whether this crime necessarily involves moral turpitude, we are to consider "the nature of the offense as it bears on the attorney's moral fitness to continue in the practice of law." *Heard,* 603 S.W.2d at 835; *Humphreys,* 880 S.W.2d at 407. Furthermore, crimes involving moral turpitude are those that involve dishonesty, fraud, deceit, misrepresentation, deliberate violence, or that reflect adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. The federal statute outlawing misprision of felony provides:

> Misprision of Felony: Whoever having knowledge of the actual commission of a felony cognizable by a court of the United States conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States shall be fined not more than $500 or imprisoned not more than three years, or both.

18 U.S.C. § 4.

Various federal cases have interpreted the elements of misprision of a felony as the

whether the elements of misprision of felony

following: 1) the principal committed and completed the felony alleged; 2) the defendant had full knowledge of that fact; 3) the defendant failed to notify the authorities; and 4) the defendant took an affirmative step to conceal the crime. *See, e.g., U.S. v. Ciambrone,* 750 F.2d 1416, 1417 (9th Cir.1984); *United States v. Baez,* 732 F.2d 780, 782 (10th Cir 1984).

 The statute itself, however, does not define the word "conceal." BLACK'S LAW DICTIONARY defines "conceal" as follows:

> To hide, secrete, or withhold from the knowledge of others. To withdraw from observation; to withhold from utterance or declaration; to cover or keep from sight. To hide or withdraw from observation, cover or keep from sight, or prevent discovery of.

BLACK'S LAW DICTIONARY 261 (5th ed. 1979). A literal reading of the misprision of felony statute leaves open the possibility that one could be prosecuted for having knowledge of the commission of a felony, which one willfully withholds from investigating authorities because that knowledge was obtained under the attorney-client privilege. Because a conviction for misprision of felony could conceivably be based upon an attorney's refusal to divulge privileged information, we hold that it does not involve moral turpitude *per se.*

 While the willful concealment of non-confidential information would involve moral turpitude, the refusal to divulge privileged information is an entirely different matter. A lawyer has a solemn obligation not to reveal privileged and other confidential client information, except as permitted or required in certain limited circumstances as provided in the rules. *See generally* TEX.DISCIPLINARY R.PROF.CONDUCT Rule 1.05.

 Some federal courts have held that mere silence is insufficient to satisfy the elements of misprision of felony. *See United States v. Warters,* 885 F.2d 1266, 1275 (5th Cir.1989). The statute by its terms is not so limited, however, and not all convictions appear to have met this standard. *See In Re*

constitute moral turpitude.

*Morris,* 164 Ariz. 391, 793 P.2d 544 (1990).[4] If a conviction were to occur under such circumstances, the attorney should not be subject to compulsory discipline for asserting a privilege he or she is bound to honor. As TEX.R.CIV.EVID. 503(b) states: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."[5] Our rules recognize that our system of justice relies on a client's privilege to speak frankly and candidly with his or her attorney. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).[6]

Texas Rule of Disciplinary Procedure 8.01 allows the OCDC to pursue two different avenues of discipline. If the attorney is convicted of an "Intentional Crime," then the OCDC may initiate compulsory discipline. Otherwise, the attorney "may be disciplined as a result of the underlying facts." *Id.*

In these circumstances, BODA cannot determine whether Duncan committed an intentional crime without at least reviewing part or all of the underlying criminal proceeding, perhaps conducting a *de novo* hearing. Allowing such a review would impair, or in some cases destroy, the summary nature of the compulsory discipline procedure. As we stated in *Humphreys,* "compulsory discipline for an Intentional Crime turns solely on the validity of the record of conviction, the nature of the sentence, and the factual determination that the Respondent is the same person as the party adjudicated guilty." *Humphreys,* 880 S.W.2d at 406. Since misprision of felony does not involve moral turpitude *per se,* BODA is precluded from further reviewing the facts in the record to determine whether the attorney engaged in a crime involving moral turpitude.

For these reasons, we hold that Duncan is not subject to compulsory discipline. We therefore reverse BODA's order suspending Duncan from the practice of law. We remand this case to BODA for further proceedings consistent with this opinion. Our holding does not preclude the OCDC from pursuing discipline based on the general underlying facts of the attorney's conduct.

OWEN, Justice, joined by ENOCH, Justice, concurring.

Although I agree with the majority that misprision of a felony, as codified in 18 U.S.C. § 4, does not involve moral turpitude *per se,* I do not agree with the Court's conclusion that this case should be remanded for regular disciplinary proceedings. Rather, there is an intermediate step which should be taken. I would remand this case for the Board to determine, based solely on a review of the facts in Duncan's record of conviction, whether his particular crime involved moral turpitude. TEX.R.DISCIPLINARY P. 8.02. As we stated in *Humphreys,* "[n]ot all crimes may be classified according to *per se* rules.

---

4. Morris was convicted of misprision of felony even though he informed his client that its conduct would be illegal and terminated the attorney-client relationship. The Arizona Supreme Court stated that Morris "did not affirmatively conceal his former client's offense from the authorities. Rather, he failed to take affirmative steps to report the offense." 793 P.2d at 546. Under its rules, Arizona was required to discipline every attorney convicted of a felony. Texas, however, requires discipline only of "Intentional Crimes." Under our standard, if the facts were as explained in the opinion, Morris would not have been subject to compulsory discipline.

5. Federal Rule of Evidence 501 similarly states a client's privilege to refuse to discuss confidential communications made with the attorney.

6. It is important to this analysis to distinguish misprision from laws punishing accessories after the fact. *See, e.g.,* 18 U.S.C. § 3. Unlike an accessory after the fact, a person commits misprision even "without giving any degree of maintenance to the felon." *United States v. Perlstein,* 126 F.2d 789, 798 (3d Cir.1942), *cert. denied,* 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942). Also, misprision requires the underlying felony to be complete. *United States v. Hodges,* 566 F.2d 674, 675 (9th Cir.1977). It is therefore distinguishable from the instance where an attorney must disclose client confidences "if it is likely" that the client will cause death or substantial bodily harm to a person, *see* TEX DISCIPLINARY R.PROF.CONDUCT 1.05(e), or circumstances where the crime-fraud exception to the attorney-client privilege would apply, TEX.R.CR.EVID. 503(d)(1). In addition, while a refusal to give any statement might satisfy the last element of misprision, it is different than perjury, which requires a false statement. *Compare 18 U.S.C. § 4* (misprision) *with 18 U.S.C. §§ 1621, 1623* (perjury.)

If an attorney is convicted of a crime that is not *per se* a crime involving moral turpitude, then the Board of Disciplinary Appeals must determine whether the particular conviction involved an Intentional Crime." *In the Matter of Humphreys,* 880 S.W.2d 402, 408 n. 7 (Tex.), *cert. denied,* —— U.S. ——, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994). If the record of conviction indicates Duncan's crime involved moral turpitude, it would be an "Intentional Crime" as defined by Disciplinary Rule 1.06(O) and would subject Duncan to compulsory discipline.

In making this determination, the Board does not consider new evidence nor does it resolve disputed issues of fact. The Board considers only the record of conviction to the extent necessary to determine the elements of the crime upon which Duncan's conviction was based. The nature of the record of the conviction will depend on whether the defendant pled guilty, was convicted following a trial by jury, or was convicted in a bench trial. In each instance, the record will contain the facts upon which the conviction was based and upon which the Board may base its conclusion as to whether a particular crime involved moral turpitude.

In every case, the indictment or information may be used as a source of the factual basis for a determination of moral turpitude. *See United States v. Bachynsky,* 949 F.2d 722, 730 (5th Cir.1991) (stating that, if sufficiently specific, an indictment or information may be used as the factual basis to support a guilty plea), *cert. denied,* —— U.S. ——, 113 S.Ct. 150, 121 L.Ed.2d 101 (1992). Further, if the defendant has entered into a plea bargain, the Board should consider the facts contained in the record upon which the trial court based its decision to accept the guilty plea. Before accepting a guilty plea, the court must be satisfied that there are sufficient facts in the record to support the plea. *See* FED.R.CRIM.P. 11(f) (requiring a "factual basis for the plea"); *see also United States v. Adams,* 961 F.2d 505, 508 (5th Cir.1992). In the case of a conviction following a trial by jury, the Board should consider the elements of the crime detailed in the charge to the jury, including the elements, instructions, and definitions, to determine whether the particular criminal act involves moral turpitude. If an attorney is convicted after a bench trial, the Board should consider the judge's findings of fact or the judge's opinion or memorandum of decision, if any, to determine whether the particular criminal act involved moral turpitude. *See* FED.R.CRIM.P. 23(c) (authorizing special findings of fact upon request and stating that the facts in an opinion or memorandum of decision are sufficient as findings).

If the Board determines from this type of review that a particular criminal act involves moral turpitude, then compulsory discipline is permitted. On the other hand, if the Board determines that the facts do not show moral turpitude, or that the record of the facts is insufficient to determine the existence of moral turpitude, no compulsory discipline would be permitted. The OCDC may then, however, consider whether to pursue discipline "as a result of the underlying facts." TEX.R.DISCIPLINARY P. 8.01 (1992).

For these reasons I concur that this matter should be remanded to the Board of Disciplinary Appeals; I disagree that compulsory discipline would not be available in this case.

CORNYN, Justice, joined by HECHT, Justice, concurring in part and dissenting in part.

I agree with the Court that if misprision of felony is not a felony involving moral turpitude, then compulsory discipline is not available and the OCDC must proceed, if at all, under the non-compulsory discipline procedures set out in Part II of the Texas Rules of Disciplinary Procedure. I dissent, however, from the Court's holding that misprision of felony is not a felony involving moral turpitude.

The elements of misprision of felony are: 1) the principal committed and completed the felony alleged; 2) the defendant had full knowledge of that fact; 3) the defendant failed to notify the authorities; and 4) *the defendant took an affirmative step to conceal the crime.* *United States v. Ciambrone,* 750 F.2d 1416, 1417 (9th Cir.1984) (emphasis added). The fourth element, taking an affirmative step to conceal the crime, compels the

conclusion that this is a crime of moral turpitude. The word "conceal" has been interpreted to mean "something more than mere failure to disclose—some affirmative act of concealment, such as suppression of the evidence, harboring of the criminal, intimidation of witnesses, or other positive act designed to conceal from the authorities the fact that a crime had been committed." *Bratton v. United States,* 73 F.2d 795, 797 (10th Cir. 1934).

Taking an affirmative step to conceal a felony is an act of deceit or misrepresentation that undermines the honesty, trustworthiness, and general fitness demanded of a lawyer. Because of the position of public trust lawyers enjoy, they must meet the highest of all professional standards. As the United States Supreme Court has stated:

> Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws, ... argues recreancy to his position and office.... It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve.

*Ex parte Wall,* 107 U.S. 265, 274, 27 L.Ed. 552 (1882). At least two other state supreme courts have determined that misprision of felony involves moral turpitude or is a serious crime, and that conviction of that crime subjects an attorney to compulsory discipline. *Office of Disciplinary Counsel v. Shorall,* 527 Pa. 413, 592 A.2d 1285, 1292 (1991); *In re Russell,* 493 N.W.2d 715, 716 (S.D.1992). I too would hold that misprision of felony is a crime of moral turpitude, and that an attorney who is convicted of it is subject to compulsory discipline.

The Court's concern for potential erosion of the attorney-client privilege is unfounded. Duncan does not contend that he has been convicted of misprision of felony for invoking the attorney-client privilege, or for mere silence. Moreover, the Court cites no case in which an attorney was convicted of misprision of felony for simply asserting the privilege, and the federal courts have held that silence alone cannot amount to misprision of felony. *See, e.g., United States v. Warters,*

885 F.2d 1266, 1275 (5th Cir.1989). In the only case cited by the Court as an example of attorney discipline based on a conviction for misprision of felony without an affirmative act of concealment, the Arizona Supreme Court expressly stated: "We do not address any issue relative to the attorney-client privilege or to an attorney's duty to disclose a client's criminal activities." *In re Morris,* 164 Ariz. 391, 793 P.2d 544, 546 (1990). There is simply no support for the conclusion that maintaining client confidences, in the absence of an affirmative act of concealment, would support a conviction for misprision of felony.

I accordingly dissent from the Court's holding that misprision of felony is not a felony involving moral turpitude.