Petition for Writ of Mandamus Conditionally Granted and Majority and
Dissenting Opinions filed April 24, 2008








Petition for Writ of Mandamus Conditionally Granted
and Majority and Dissenting Opinions filed April 24, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00590-CV

____________

 

IN RE MICHAEL HICKS AND JERRY FAZIO, Relators

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

M A J O R I T Y   O P I N I O N

In this original proceeding, relators, Michael Hicks and
Jerry Fazio, seek a writ of mandamus ordering the respondent, Judge Dan R.
Beck, to vacate his order of June 18, 2007[1],
granting a motion to compel discovery filed by the real parties in interest,
Catherine Taylor, individually and as next friend of Charles D. Taylor, and
William Heitkamp, Standing Trustee of the United States Bankruptcy Court. 
Concluding that the discovery is protected by the attorney-client and work
product privileges, we conditionally grant the writ.








I.  Factual and Procedural Background

A.        The Taylor Suit

Charles
Taylor suffered an injury while on the job.  His employer, relator Michael
Hicks, was a non-subscriber under the Texas Workers= Compensation Act, and Clarendon
Insurance Group, Inc. was Hicks=s liability insurer.  In 1999, Taylor filed a personal injury
suit against Hicks and others regarding Taylor=s injuries (the ATaylor suit@).  Clarendon assigned relator Jerry
Fazio as defense counsel.  In 2002, a jury returned a verdict of $20,000,000 in
the Taylor suit.

While
the Taylor suit was pending, Hicks and his wife filed for bankruptcy protection
under Chapter 13 of the United States Bankruptcy Code.  See 11 U.S.C. '1301, et seq.  In the
bankruptcy proceeding, Hicks assigned to William Heitkamp, as the Chapter 13
trustee, all claims, rights, and causes of action, Aincluding but not limited to . . .
breach of any duty . . . claims of negligence, negligent misrepresentation,
fraud, . . . insurance bad faith, fiduciary bad faith, fiduciary duty violation
of any kind held or to be held against any liable person or entity whether
perpetrated upon, resulting to, or incurred by Michael Porter Hicks, Sr.,
and/or [his wife and two other companies and their agents], for losses as well
as any and all liabilities related in any way or by any legal or factual
circumstance or source to that certain personal injury of Charles Taylor . . .
arising from or related to the damages suffered or claims made [in the Taylor
suit] . . . .@ 

In an
agreed order signed by the Hickses and the bankruptcy judge, the bankruptcy
court ordered that the bankruptcy plan contain the above assignment language,
as well as the following language regarding cooperation by the Hickses:








The Chapter 13 Debtors, Michael Porter Hicks, Sr. and
Carolyn Sue Hicks, agree and shall pursuant to this order timely cooperate with
the Trustee or any agent or assignee of the Trustee for the Trustee or his
assignee to execute instruments so that the Trustee or his assignee is able to
receive and be provided information, testimony, documentation, and such rights
as may exist for establishing liability and determining damages for the claims
assigned, the proof of liability and any damages as well as the basis for legal
recovery, legal documentation and evidentiary proof necessary for obtaining
legal recovery of money whether by preparation of a documented claim,
mediation, private arbitration, settlement or a trial.  Further, Michael Porter
Hicks, Sr., LMS Rentals, Inc., American Fabritech, Inc. together with Carolyn
Sue Hicks further irrevocably and absolutely make such assignment of claims and
rights to the Chapter 13 Trustee, William Heitkamp for the Trustee or his
assignee to receive all documentation, information and testimony from Michael Porter
Hicks, Sr., individually and/or as the agent or officer of LMS Rentals, Inc.
and American Fabritech, Inc.  Failure to cooperate to provide information,
execute instruments of assignment, designation or in discovery for
documentation, evidence or rights shall be grounds for objection to a final
Chapter 13 or Chapter 7 discharge and the failure to obey this Order.

Several
years later, on August 5, 2005, Fazio received a letter from an attorney
representing Taylor and Heitkamp along with an AAuthorization for Release of
Information@ signed by Hicks.  The attorney requested that Fazio provide a complete
copy of the file relating to the Taylor suit.  The authorization, signed by
Hicks on August 4, 2005, covered any documents or materials Acomprising any aspect of the files or
client information kept regarding@ the Taylor suit and included the
following language: AI specifically waive any attorney-client privilege which may
exist with regard to any aspect of this authorization.@  Fazio responded on August 8,
attaching a revocation by Hicks of the authorization that he had signed just a
few days earlier.  In his revocation of the authorization, Hicks stated that he
did not wish to waive his attorney-client privilege.   

B.        The Underlying Suit








Subsequently,
Clarendon filed the underlying interpleader action seeking to tender the
remaining insurance policy limits into the registry of the court.  In addition
to answering the suit, Taylor and Heitkamp filed counterclaims and
cross-claims, asserting fraud and breach-of-contract claims against Clarendon
and Hicks. Taylor and Heitkamp also asserted negligent-misrepresentation claims
against Hicks, and they alleged that Clarendon, Hicks, and Fazio conspired to
defraud Taylor and Heitkamp.  

Hicks and Fazio propounded discovery requests, and Taylor
and Heitkamp filed a motion for protective order in opposition to these
requests, which the trial court heard on June 20, 2006.  During the June 20
hearing, Taylor=s and Heitkamp=s counsel asserted
that Hicks agreed to the release of the file in the Taylor suit in the
bankruptcy order, and counsel made an oral motion for the trial court to order
the file produced to Taylor and Heitkamp.  Hicks and Fazio=s counsel objected
that (1) the only motion Taylor and Heitkamp had filed was their motion for
protective order against Hicks and Fazio=s discovery
requests, (2) Taylor and Heitkamp had not filed a motion seeking to compel
production of Fazio=s litigation file, nor had they requested
that this file be produced in discovery.  Taylor=s and Heitkamp=s counsel later
made an oral motion for an order that Hicks sign a release authorizing Fazio 
to produce the litigation file.  

The trial court did not make any ruling at the June 20,
2006, hearing but took the matter under advisement pending the filing of
additional briefing.  In
a subsequent docket-sheet entry, the trial court made a notation indicating
that Hicks was to execute an authorization for release of information and Fazio
was to Aproduce entire file from the Taylor
lawsuit.@  Hicks and Fazio filed a mandamus
petition in this court challenging this purported ruling by the trial court,
but on September 8, 2006, this court denied the petition because there was no
written order signed by the trial court.








Subsequently,
Taylor and Heitkamp served a request for production on Hicks and Fazio seeking the
litigation file from the Taylor suit.  In response, Hicks and Fazio asserted
only the attorney-client and work-product privileges.  Taylor and Heitkamp
filed a written motion to compel, requesting that the trial court sign a
written order compelling the production of the litigation documents from the
Taylor suit that were requested by oral motion at the June 20, 2006 hearing and
then by written discovery request.  On June 18, 2007, the trial court signed an
order compelling Hicks and Fazio to produce the requested discovery. Hicks and
Fazio filed this original proceeding claiming the trial court abused its
discretion in this order by (1) compelling production of Fazio=s litigation file,
(2) compelling Hicks to sign an authorization to release privileged information
that would waive his attorney-client privilege, and (3) granting Taylor=s and Heitkamp=s motion for
protective order.  

II.  Analysis

In their
first issue, relators contend the trial court abused its discretion in
compelling disclosure of Fazio=s litigation file because the file is protected by the
attorney-client and work product privileges.  Taylor and Heitkamp concede that
Fazio=s Acore@ work product is protected, and they
have waived discovery of core work product.  Taylor and Heitkamp claim,
however, that Hicks waived the attorney-client privilege (1) through the
assignment of rights in the bankruptcy order, and (2) through the authorization
for release of information and documents addressed to Clarendon.  At issue in
this case is whether Judge Beck=s order requiring Hicks to produce Fazio=s litigation file would require
disclosure of matters that are protected by the attorney-client privilege.  If
so, the trial court=s order would be a clear abuse of discretion for which writ
of mandamus may issue.  See West v. Solito, 563 S.W.2d 240, 244 (Tex.
1978).

A.  Intentional Waiver
in the Bankruptcy Order








The
attorney‑client privilege is governed by Texas Rule of Evidence 503.
Under this rule, a Aclient has a privilege to refuse to disclose and to prevent
any other person from disclosing confidential communications made for the
purpose of facilitating the rendition of professional legal services to the
client.@  Tex.
R. Evid. 503(b)(1).  The privilege covers not only direct communications
between lawyer and client but also communications involving the client=s representatives and the lawyer=s representatives, so long as they
were made for the purpose of facilitating legal services to the client.  Tex. R. Evid. 503(b)(1)(A), (D).

The
attorney-client privilege facilitates free and open communication between
attorney and client and assures that the communication will remain confidential
to promote effective legal services.  See Republic Ins. Co. v. Davis,
856 S.W.2d 158, 160 (Tex. 1993); Tex. R.
Evid. 503.  AOur rules recognize that our system of justice relies on a
client=s privilege to speak frankly and
candidly with his or her attorney.@  Duncan v. Bd. of Disciplinary
Appeals, 898 S.W.2d 759, 762 (Tex. 1995).  The privilege may be waived
through voluntary disclosure or consent to disclosure under Texas Rule of
Evidence 511.  








Taylor
and Heitkamp argue that there is no attorney-client privilege to protect
confidential matter arising out of Fazio=s representation of Hicks because
Hicks waived the privilege when he assigned his claims to Heitkamp in the
bankruptcy order.  An assignment of rights and claims does not automatically
include a waiver of attorney-client privilege unless specifically stated in the
language of the assignment.  In re Cooper, 47 S.W.3d 206, 209 (Tex. App.CBeaumont 2001, orig. proceeding).  In
Cooper, the court of appeals addressed the status of privileged
documents in a litigation file following assignment of a Stowers[2]
claim, and held that the privilege is not abrogated by the assignment.  Id. 
The defendant Cooper had given the plaintiff a written assignment of his Stowers
action, omitting any language that could be construed as an affirmative
waiver of Cooper=s attorney-client privilege.  Id. at 208.  The trial
court held that Cooper=s assignment of his claim was tantamount to a voluntary
waiver of privilege.  Id. at 208B09.  The court of appeals rejected
the proposition that assignment of a claim operates as a waiver of privilege
associated with the underlying litigation.  Id. at 209.  Looking to the
purpose behind the attorney-client privilege and the specific language of the
assignment, the court concluded:

[T]he
assignment=s language does not provide for Cooper to waive or
assign any right he had to assert his attorney‑client privilege.  It does
not provide for him to voluntarily disclose or consent to disclosure of any
significant part of the matters protected by his attorney‑client
privilege. Nor does it even provide for Cooper to cooperate as to matters
giving rise to his claims against his insurers. 

Id.

In this
case, the language of the bankruptcy order provides neither for Hicks to assign
his right to waive the attorney-client privilege, nor for him to voluntarily
disclose or consent to disclosure of any significant part of the matters
protected by the attorney-client privilege.  The only factual distinction
between this case and Cooper is that the bankruptcy order contained
language providing for Hicks to cooperate with regard to obtaining
documentation to support his assigned claims.  However, cooperation language
alone is not sufficient to waive the attorney-client privilege.

Waiver
is the intentional relinquishment of a known right made expressly or indicated
by conduct that is inconsistent with an intent to claim the right.  United
States Fid. & Guar. Co. v. Bimco Iron & Metal Corp., 464
S.W.2d 353, 357 (Tex. 1971).  In this case, the language of the assignment in
the bankruptcy order does not provide for Hicks to waive or assign any right he
had to assert his attorney-client privilege. 








Taylor
and Heitkamp cite this court=s opinion in In re General Agents Ins. Co. of America,
Inc., 224 S.W.3d 806 (Tex. App.CHouston [14th Dist.] 2007, orig.
proceeding),  as support for the proposition that an assignment of rights and
claims can include an assignment of the right to waive the attorney-client
privilege.  In that case, the party seeking discovery based its claim to
privileged materials on an assignment of claims, alleging that the party that
assigned its rights waived its right to assert any privileges by virtue of the
assignment.  Id. at 812.  Before the trial court ruled on that
contention, the parties filed a second assignment of rights, which specifically
included assignment of Aattorney/client communication privileges.@  Id. at
813.  In a footnote, this court stated that the parties Athought the first
assignment was sufficient to transfer the right to waive the privileges in
question.  Thus, the second assignment is more in the way of a clarification
than a completely new agreement.@  Id. at
814, n. 1.  This court did not hold that the first assignment was sufficient to
transfer the right to waive the attorney-client privilege, but merely
recognized that the parties operated under that understanding.  

In this case, the assignment language in the bankruptcy
order does not specifically waive the attorney-client privilege.  Further, the Acooperation@ language does not
impliedly waive the attorney-client privilege, especially in light of Hicks=s intent not to waive
the privilege.  Therefore, by assigning his rights and claims to the bankruptcy
trustee, without specific language addressing the attorney-client privilege,
Hicks did not assign the right to waive the attorney-client privilege.  See Cooper, 47 S.W.3d at 209.

B.  Implied Waiver in the Release
to Clarendon

Taylor and Heitkamp further contend that Hicks waived the
right to assert the attorney-client privilege by executing an authorization for
the release of information and documents to Clarendon.  On October 6, 2006,
Hicks signed a release containing the following language:

TO:    Clarendon Insurance Group, Inc., their
agents, successors, and assigns.

RE:    Coverage of and documents and communications
concerning Michael Hicks and Taylor v. Hicks, Cause No. 97V-100 in the
155th Judicial District, State of Texas

You are hereby fully authorized and requested to permit the examination
of, and copying or reproduction, in any manner, whether mechanical,
photographic, or otherwise, by the Hershewe Law Firm, P.C., and their
authorized agents, any and all portions of the following:








The full contents of any file(s) compiled concerning any insurance
policies or coverage extended to me personally or to entities of which I was a
principal and concerning the defense provided me during the above-referenced
action, including communications with my counsel.

 

The authorization directed Clarendon to produce copies of
the underwriting and claims files pertaining to Hicks=s insurance and
defense including communications with Hicks=s counsel.  Taylor
and Heitkamp argue that the authorization Adispenses with the
entire issue of >attorney-client= privilege@ because Hicks
consented to disclosure of his communications with counsel to Clarendon.  The
attorney-client privilege may be waived through voluntary disclosure or consent
to disclosure under Rule of Evidence 511.  However, the record does not reflect
that Hicks consented to disclosure of privileged material in Fazio=s litigation
file.  Taylor and Heitkamp emphasize the language in the release referring to Acommunications
with my counsel.@  Though the release includes
communications with Hicks=s counsel, it is clear from context that
this language refers to the insurance files compiled by Clarendon, not Fazio=s litigation
file.  Further, the record contains another authorization directed to Fazio,
but Hicks did not sign that authorization.  Therefore, by executing the
authorization for release of Clarendon=s file, Hicks did
not waive attorney-client privilege with regard to Fazio=s litigation
file.  We sustain relators= first issue.

In their second and third issues, Hicks and Fazio contend
that the trial court clearly abused its discretion by, in its June 18, 2007
order, (1) compelling Hicks to sign an authorization to release privileged
information that would waive his attorney-client and work-product privileges
and (2) granting Taylor=s and Heitkamp=s motion for
protective order.  However, the trial court, in its written order, did not
compel Hicks to sign an authorization or waiver, nor did the trial court grant
a motion for protective order.  Because the trial court did not grant the
relief challenged in the second and third issues, we overrule these issues.  








III.  Conclusion

Relators timely asserted the work product and
attorney-client privileges.  The real parties in interest failed to show waiver
of those privileges.  The trial court therefore abused its discretion in
ordering the privileged documents to be produced.  We conditionally grant the
petition for writ of mandamus and direct the trial court to vacate its order of
June 18, 2007, compelling production of the litigation file.  We are confident
the trial judge will comply and the writ will issue only in the event he does
not.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Petition
Conditionally Granted and Majority and Dissenting Opinions filed April 24,
2008.

Panel consists of
Chief Justice Hedges and Justices Frost and Guzman. (Frost, J., Dissenting).

 

 

 

 

 









[1]  The order reflects that it was signed June 18,
2006.  The district clerk=s file stamp reflects that the order was filed June
18, 2007.  A review of the record reveals that the order was actually signed
June 18, 2007 and the date reflected in the trial judge=s signature line is a typographical error.





[2]  See Stowers Furniture Co. v. Am. Indem. Co.,
15 S.W.2d 544 (Tex. Comm=n App. 1929) (recognizing the duty of an insurer to
exercise ordinary care in the settlement of claims to protect its insureds
against judgments in excess of policy limits).