## In re Anonymous No. 34 D.B. 93

Disciplinary Board Docket no. 34 D.B. 93.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NIX, *Member,* December 12, 1995—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

By order of the Supreme Court of Pennsylvania dated February 25, 1993, a rule to show cause why the respondent should not be placed on temporary suspension was issued.

By order of the Supreme Court of Pennsylvania dated April 15, 1993, respondent was placed on temporary suspension effective May 15, 1993 and referred the matter to the Disciplinary Board.

On October 1, 1993, the matter was referred to Hearing Committee [    ] consisting of [    ], Esquire, chairperson and [    ], Esquire and [    ], Esquire, members.

On August 2, 1994, Hearing Committee [    ] was discharged and the matter was transferred to District [    ].

On August 8, 1994, the matter was referred to Hearing Committee [    ], consisting of [    ], Esquire, chairperson, and [    ], Esquire and [    ], Esquire, members.

On October 31, 1994, a Disciplinary Hearing was held.

The Hearing Committee filed its report on July 5, 1995 recommending a 30 month suspension retroactive to May 15, 1993.

The matter was adjudicated at the October 5, 1995 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) In 1973, respondent was admitted to practice law in the Commonwealth of Pennsylvania, the United States District Court for the [    ] District of Pennsylvania, and the District of Columbia.

(3) In August 1985, [A] gave birth to a son, [B], out of wedlock. Respondent, who maintained a separate residence, was the father.

(4) In or about May 1990, [A] filed a private criminal complaint in [    ] Municipal Court, alleging that respondent had harassed and threatened her for the preceding five years.

(5) On August 17, 1990, Municipal Court Judge [C] issued a protective order barring respondent from contact with [A] and her family.

(6) On September 10, 1990, Judge [C] found respondent in contempt of the protective order and imposed a suspended sentence. (Stip. 13; P-3.)

(7) On December 6, 1990, the day before trial was to begin on the charges set forth in the private criminal complaint, the [    ] District Attorney's Office filed a separate criminal complaint alleging that during the week of November 12, 1990, respondent telephoned the [A] residence and told [A] that he was going to kill her if she appeared in court on December 7, 1990.

(8) Both complaints were consolidated for a bench trial before Municipal Court Judge [D], who found respondent guilty of several misdemeanors and imposed a sentence of probation for two years with intensive psychiatric and psychological counseling.

(9) Respondent exercised his right to a de novo appeal to the Court of Common Pleas of [    ] County.

(10) On May 29, 1992, a jury convicted respondent of two counts of terroristic threats, one count of harassment by communication or address, and one count of harassment.

(11) On November 2, 1992, the Honorable [E] sentenced respondent, on each of the two counts of terroristic threats, to a term of imprisonment of not less than one year nor more than two years in the State Correctional Institution at [    ] to be served concurrently. The court also imposed costs and mandatory fees totaling $145, issued a stay-away order, and revoked bail pending appeal. On the charge of harassment by communication or address, the court imposed a sentence of one year of probation to run consecutively to the term of imprisonment imposed on one of the counts of terroristic threats.

(12) Respondent did not report the fact of his convictions to the secretary of the board within 20 days after the date of sentencing, as required by Pa.R.D.E. 214(a).

(13) On March 24, 1993, Judge [E] issued an opinion, which summarized the trial evidence of repeated threats and harassment by respondent of [A], as follows:

"(a) On three occasions in 1989 and 1991, respondent drove slowly by [A's] home. As respondent drove by on the first occasion, he said, 'You're dead bitch.'

"(b) On October 1, 1991, respondent drove past the [A] residence and waved a gun in [A's] direction.

"(c) For several years, [A] and other members of her family received numerous offers of insurance, including accidental death and dismemberment and life. In 1989, respondent telephoned [A] and asked her if she had received the insurance policies because she would be needing them.

"(d) Beginning in 1988, respondent made approximately five death threats.

"(e) On March 29, 1990, following a family court hearing concerning [B], respondent or another acting at his direction, attempted to strike the [As] with an automobile as they were crossing a city street.

"(f) On July 16, 1990, respondent telephoned [A], at which time he threatened to kill her and told her that he would get her son away from her.

"(g) On November 12, 1990, respondent telephoned [A], at which time he told her he was going to 'kill (her) motherfucking ass' and told her that she 'better not show up in court.' "

(14) The Commonwealth also presented evidence showing that in or about June 1991, respondent, while inside the family court building, threatened to inflict serious bodily injury upon [A's] mother and in or about April 1992, respondent threatened to kill [A's] mother as she was leaving the family court nursery.

(15) By order dated April 15, 1993, the Supreme Court of Pennsylvania placed respondent on temporary suspension.

(16) Respondent did not report his conviction and/or temporary suspension to the United States District Court for the [ ] District of Pennsylvania or the District of Columbia Court of Appeals, although required to do so by Disciplinary Enforcement Rules in those jurisdictions.

(17) By order dated July 12, 1993, the United States District Court for the [ ] District of Pennsylvania placed respondent on temporary suspension.

(18) By memorandum opinion filed August 6, 1993, the Superior Court affirmed respondent's criminal convictions.

(19) Respondent was paroled to a [ ] residence on April 22, 1994.

(20) During his incarceration, respondent was a model prisoner.

(21) Respondent has no previous record of discipline.

(22) As of September 30, 1994, there were seven unsatisfied judgments against respondent totaling $9,505.40; $4,848.40 of which relates to child support arrearages.

(23) Respondent has not made significant effort to satisfy such judgments, despite the fact that he has some equity interest in various parcels of real estate, as well as income from rental properties.

## III. CONCLUSIONS OF LAW

Terroristic threats and harassment by communication or address are "serious crimes" under Pa.R.D.E. 214(i).

Respondent's convictions constitute per se grounds for discipline under Pa.R.D.E. 203(b)(1).

By not reporting his convictions to the secretary of the board within 20 days after the date of sentencing, respondent violated Pa.R.D.E. 214(a).

As a result of the facts and circumstances surrounding respondent's criminal convictions, respondent violated R.P.C. 8.4(b) and R.P.C. 8.4(d).

## IV. DISCUSSION

This matter is before this board as a result of respondent having been found guilty, after a jury trial in the Court of Common Pleas of [    ] County, of two counts of terroristic threats, one count of harassment by communication or address, and one count of harassment.

A conviction of a "serious crime" provides a per se basis for discipline. *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 584 A.2d 296 (1990). A "serious crime" is defined as one punishable by imprisonment of one year or upward. Both terroristic threats, a misdemeanor punishable by imprisonment of up to five years (P-5), and harassment by communication or address, a misdemeanor punishable by imprisonment of up to one year (P-5), constitute a serious crime.

In addition, a respondent may also be disciplined for violation of Disciplinary Rules as a result of the conduct underlying the criminal conviction. *Office of Disciplinary Counsel v. Shorall,* 527 Pa. 413, 592 A.2d 1285 (1991). In the present case, the respondent's conduct of threatening and harassing the [As], his violation of a protective order and his threats to an opposing party-witness during the pendency of criminal and civil proceedings, is clearly misconduct and subject to discipline.

Further, the respondent's failure to report his conviction of a serious crime to the secretary of the Disciplinary Board, within 20 days after the date of sentencing, is a violation of Pa.R.D.E. 214(a). The respondent testified that he did not report his convictions after sentencing because he had been "completely traumatized" by the convictions. (N.T. 25.) Regardless of respondent's state of mind in the weeks and months following the imposition of sentence, respondent's alleged inability to cope does not serve as a defense. *In re Anonymous No. 100 D.B. 88,* 12 D.&C.4th 60 (1990).

Having determined that the respondent's actions have resulted in misconduct, it is this board's duty to determine appropriate discipline. The determination of discipline is a mixed question of law and fact coupled with the discretion necessary to fashion an appropriate remedy. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). The current matter which might be characterized as "stalking" in nature is a case of first impression. In other Pennsylvania cases, that are only remotely similar to the instant case, which involved criminal convictions for domestic violence or misdemeanor offenses involving assaultive behavior would, at a minimum, require the respondent to petition for reinstatement under Pa.R.D.E. 218. This rule, essentially, provides that no attorney disbarred or suspended for a period exceeding one year may resume practice until reinstated by order of the Supreme Court after demonstrating, by clear and convincing evidence, current fitness to practice law. See Pa.R.D.E. 218(a), (c)(3)(i).

On the one extreme, a respondent who killed his girlfriend by shooting her five times in various parts of her body, who later pled guilty to voluntary man-

slaughter as defined by the California Penal Code, who served three and one-half years of his sentence in prison before being paroled, and who successfully reformed prior alcohol and drug dependencies that were partially responsible for his violent act, was disbarred retroactive to the date of the temporary suspension order. *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 512 A.2d 607 (1986).

In another case, the respondent approached his estranged spouse from the rear, shot her twice at close range in the back of the head and a third time in the cheek. After the spouse fell to the floor, the respondent shot her twice more in the back. After eluding the police for a period of more than two months, the respondent voluntarily committed himself to a state hospital, where he was diagnosed as suffering from manic depression, hysterical personality with anti-social features, and alcoholism. In recommending a suspension of five years retroactive to the date of temporary suspension, which was accepted by the Supreme Court, the Disciplinary Board relied upon various mitigating factors, including the respondent's psychiatric condition at the time of the offense and medical expert testimony that the respondent was rehabilitated and "psychologically fit" to practice law. *In re Anonymous No. 62 D.B. 75,* 14 D.&C.3d 741 (1980).

In *In re Anonymous No. 46 D.B. 84,* 39 D.&C.3d 234 (1986), a respondent arrested for resisting arrest and terroristic threats, entered a guilty plea to one count of resisting arrest and was placed on probation, was disciplined and had to go through reinstatement proceedings.

Clearly, the majority of Pennsylvania cases involving a criminal conviction for domestic violence or a misdemeanor offense involving assaultive behavior, re-

sulted in discipline that would preclude the respondent from further practicing law until the respondent petitioned for reinstatement and met his or her burden of proving fitness to practice.

In reviewing authorities from other jurisdictions, there appear to be no cases directly on point. In *Florida Bar v. Patarini,* 548 So.2d 1110 (Fla. 1989), the respondent entered into discussions with a "muscle man" to physically harm his ex-wife's attorney. The multiple meetings and conversations that had taken place over several weeks, ended with the respondent telling the "muscle man" that he would call him if he needed him. Noting that the respondent's misconduct was an isolated incident that never went beyond the talking stage and that the misconduct resulted from an intense emotional strain resulting from the lawyer's divorce, the Florida Supreme Court imposed a suspension for "one year and thereafter until he has demonstrated fitness to be reinstated."

A case that reached a similar result was *Committee on Professional Ethics v. Patterson,* 369 N.W.2d 798 (Iowa 1985), where the respondent entered a guilty plea to misdemeanor assault as a result of battering an unresisting client with whom he was romantically involved. Shortly after the assault, the respondent voluntarily attended the Mayo Clinic for treatment by a psychiatrist for three days on an outpatient basis. The Supreme Court of Iowa suspended the respondent indefinitely, with no possibility of reinstatement for three months, noting that upon application for reinstatement, the respondent would have the burden of proving fitness.

In summary, both the Pennsylvania and out-of-state precedents suggest that at a minimum, the respondent should be suspended for a period of not less than a year and a day which would require a showing of fitness

to practice. In determining the precise length of any suspension, it is this board's duty to balance several factors, including the seriousness of respondent's criminal conduct, the guidance provided by precedents, respondent's failure to report his convictions to the Disciplinary Board, the fact that respondent was a model prisoner, and respondent's cooperation with Office of Disciplinary Counsel.

The seriousness of respondent's misconduct is underscored by the sentencing court's imposition of a sentence in the aggravated range. The seriousness of respondent's misconduct is not lessened by the fact that respondent's acts did not occur in the course of an attorney-client relationship or that the victims of his criminal conduct were not his clients. See *Office of Disciplinary Counsel v. Ewing,* 496 Pa. 35, 436 A.2d 139 (1981). However, respondent did not cause physical injury to the [As], and respondent was not convicted of a felony. Clearly, discipline less than a disbarment or a five year retroactive suspension is warranted.

The respondent's four year history of misconduct and the lack of any evidence by respondent of any psychological or psychiatric impairment that would qualify as mitigation under *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989), dictate a suspension more severe than the minimum discipline previously discussed. Further, respondent's failure to report his convictions to the board may be considered an aggravating circumstance. *Casety, supra* at 183-85, 512 A.2d at 610-11.

The only possible mitigating factor is the respondent's model behavior while incarcerated. There are no indications that respondent, since his release on parole, has been anything other than fully cooperative with the state parole board in its efforts to ensure that re-

spondent has no further contact with the [As]. (N.T. 33.) Further, the respondent has cooperated with the Office of Disciplinary Counsel.

The foregoing precedents suggest a suspension of moderate length. This board agrees with the finding of the Hearing Committee and recommends a suspension of 30 months retroactive to May 15, 1993.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended from the practice of law for a period of 30 months, retroactive to May 15, 1993, the date of his temporary suspension.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Member Marroletti abstained.

Board Members Paris and George did not participate in the October 6, 1995 adjudication.

## ORDER

And now, January 31, 1996, upon consideration of the report and recommendations of the Disciplinary Board dated December 12, 1995, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of 30 months, retroactive to May 15, 1993, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.